# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re the Marriage of | ) | No. 72601-3-I |
|  | ) |  |
| THERESE BROWN JENSEN, | ) | DIVISION ONE |
|  | ) |  |
| Respondent, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| RUSSELL JAMES JENSEN, JR., | ) | UNPUBLISHED |
|  | ) |  |
| Appellant. | ) | FILED: September 21, 2015 |
|  | ) |  |

Cox, J. – In a dissolution proceeding, the entry of a final decree determines the rights of the parties and renders moot prior interlocutory orders.[1] Moreover, a trial court has the authority to order the sale of the family home in such a proceeding.[2] Here, Russell James Jensen (Jamie) argues that the court erred by ordering the sale of the family home without his joinder. Because that argument is without merit under the circumstances of this case, we affirm.

In 1981, Therese and Jamie married in Minnesota.[3] They moved to Washington in 2007. The parties owned real estate in Washington and Minnesota, including their residence in Mukilteo, Washington. In August 2013, Therese commenced this dissolution proceeding. She then moved to Omaha,

---

[1] Fortier v. Fortier, 23 Wn.2d 748, 749, 162 P.2d 438 (1945).

[2] In re Marriage of Sedlock, 69 Wn. App. 484, 503, 849 P.2d 1243 (1993).

[3] This opinion refers to the parties by their first names to avoid confusion. We refer to Russell James Jensen as "Jamie," consistent with his pleadings.

Nebraska to live in a senior living community. Jamie continued to live in the Mukilteo residence.

In December 2013, Therese moved for a temporary order, seeking monthly maintenance and authority to list for sale the parties' real estate. Jamie did not contest the motion, and the trial court issued an interlocutory order, giving Therese "control and authority" to list the parties' real estate for sale.

In January 2014, the parties brought competing motions regarding their Mukilteo residence. Jamie sought to amend the court's interlocutory order granting Therese authority to list the residence for sale. Therese sought exclusive control and possession of the Mukilteo residence, arguing that Jamie had been interfering with her efforts to list the home for sale.

In a February 2014 order, the court determined that Jamie had been obstructing the listing of the Mukilteo residence. The court also noted that, at the hearing, Jamie agreed to remove his separate listing of the property and "fully cooperate with the sale of the Mukilteo residence up to [the] point of signing closing documents."[4] Because Jamie agreed to this, the court did not order him to vacate the residence before the closing of the sale. The court also noted that Therese could bring a motion to effectuate the sale if Jamie refused to sign the closing documents.

A court commissioner later approved the sale of the residence, with each party to receive 50 percent of the proceeds. The commissioner ordered Jamie to

---

[4] Clerk's Papers at 9-10.

sign the closing documents and also appointed Therese to execute the necessary documents if Jamie refused.

Jamie moved to revise the commissioner's order, which a superior court judge denied. Jamie then sought discretionary review in this court. We determined that discretionary review was not warranted. There was no further review of this court's order denying review.

Nevertheless, the pending sale of the Mukilteo residence did not close.

After the denial of discretionary review, the parties participated in mediation. As a result, they executed a CR 2A settlement agreement. In the settlement, the parties acknowledged that the "agreement is binding upon execution and enforceable in court."[5]

Under the terms of the agreement, Therese received the Mukilteo residence that had not been sold. The settlement also provided that:

> Each party hereby agrees to execute upon presentation, any and all papers, deeds, applications, security agreements, deeds of trust, promissory notes, titles, waivers or relinquishments of interest, or other documents necessary to carry out the terms of this Agreement.[6]

Therese later moved to compel Jamie to sign the documents necessary for her to close the sale of the Mukilteo residence. Jamie had transferred his interest in the property to Therese by quit claim deed. But the title insurance company closing the sale discovered that the initial title had been placed under

---

[5] Id. at 338-39.

[6] Id. at 340.

3

"Jamie Jensen" rather than "Russel[l] James Jensen, Jr.," Jamie's legal name.[7] Accordingly, the title insurance company wanted Jamie to approve the closing documents, something he refused to do.

The court granted Therese's motion to order Jamie to execute the closing documents. Jamie failed to execute the closing documents. Accordingly, the court imposed the sanctions it had previously outlined in its order directing him to execute the closing documents.

Subsequently, the court entered findings of fact and conclusions of law as well as a final decree based on the parties' CR 2A settlement agreement. The decree, consistent with the settlement, awarded the Mukilteo residence to Therese. The court's findings state that Jamie "did not dispute that he entered into the CR 2A agreement while represented by counsel and the document accurately represented what he intended to agree to, nor was there a motion to vacate the agreement based on fraud or any other ground."[8]

Jamie appeals.

## INTERLOCUTORY ORDERS

Jamie argues that the court violated several statutes when it authorized Therese to list and sell the house. We disagree.

The threshold issue is whether he can properly appeal the interlocutory orders in this case regarding the Mukilteo property after the entry of the final decree to which he agreed. We hold that he cannot.

---

[7] Id. at 334-35.

[8] Id. at 33.

4

In a dissolution proceeding, it is the court's final decree, not its interlocutory orders, which "determine[s] the rights of the parties."[9] Here, the final decree awarded the Mukilteo residence to Therese. Jamie does not argue that the final decree was improper or challenge its division of property. Jamie cannot now challenge the court's interlocutory orders when he does not dispute the final resolution of the case.

Further, even if those orders were properly before us in his appeal of the final decree, Jamie's arguments are unpersuasive.

*RCW 26.16.030 and RCW 6.13.060*

Jamie first argues that the trial court violated RCW 26.16.030(3) and RCW 6.13.060. We disagree.

RCW 26.16.030(3) prohibits spouses from selling community real estate property without the other's consent. Similarly, RCW 6.13.060 requires both spouses' acknowledgement to convey a homestead.

But the trial court in a dissolution case has authority to order the sale of the family home without both parties' consent.[10] In dissolution proceedings, the court must dispose of all property and liabilities, both community and separate, in a just and equitable manner.[11] The court has wide discretion to divide and

---

[9] Fortier, 23 Wn.2d at 749.

[10] In re Marriage of Foley, 84 Wn. App. 839, 844, 930 P.2d 929 (1997); Sedlock, 69 Wn. App. at 503.

[11] RCW 26.09.080.

5

distribute the parties' property.[12] To achieve an equitable distribution, the trial court has the authority to order the sale of the family home.[13]

Accordingly, these statutes did not prohibit the trial court from ordering the sale of the home.

### RCW 26.09.080

Jamie also argues that the court violated RCW 26.09.080 when it authorized the sale of the home. We disagree.

RCW 26.09.080 instructs courts to make "just and equitable" distributions of property and lists several factors to consider.

Here, the trial court did not violate RCW 26.09.080. Jamie does not challenge the court's ultimate property distribution, which followed the terms of the CR 2A settlement. Instead, he argues that the court's interlocutory orders, which allowed Therese to list and sell the house, violated RCW 26.09.080.

But these interlocutory orders did not distribute property. The court's initial orders did not award the Mukilteo residence to Therese. The order allowing Therese to list the property states that the proceeds from the sale of any real estate would be held in trust pending the court's further orders. Similarly, the March 7, 2013 order provides that each party will receive 50 percent of the sale proceeds.

While the court ultimately awarded the Mukilteo residence to Therese, it did so based on the parties' CR 2A agreement. Accordingly, the court's

---

[12] Foley, 84 Wn. App. at 843.

[13] Id. at 844; Sedlock, 69 Wn. App. at 503.

interlocutory orders did not distribute property. Thus, the court did not violate RCW 26.09.080.

## OTHER CLAIMS

Jamie's notice of appeal designated the court's final decree as well as several interlocutory orders. But Jamie fails to assign error to, or present argument about, the court's final decree or its findings of fact and conclusions of law.

Jamie does assign error to the trial court's sanctions for his failure to sign the closing documents and to a later award of attorney fees to Therese. But Jamie's brief contains no arguments on these assignments of error. "A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment."[14] Thus, Jamie has waived these assignments of error.

Accordingly, we decline to address Jamie's remaining requests for relief.

## ATTORNEY FEES ON APPEAL

Both parties seek attorney fees on appeal. We award fees to Therese on the basis that Jamie's appeal is frivolous.

Parties in Washington may recover attorney fees if a statute, contract, or recognized ground of equity authorizes the award.[15] Under RAP 18.9(a), "[a]n appellate court may order a party to pay compensatory damages or terms for filing a frivolous appeal."[16] "An appeal is frivolous if, considering the entire

---

[14] Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010).

[15] LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 117, 123, 330 P.3d 190 (2014).

[16] Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007).

record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal. And we resolve all doubts to whether an appeal is frivolous in favor of the appellant."[17]

Therese seeks a fee award under RAP 18.9, arguing that Jamie's appeal was frivolous. Here, in view of the fact that Jamie does not challenge the court's final decree, we determine that his appeal had "no debatable issues upon which reasonable minds might differ."[18] Thus, it is frivolous, and we grant Therese's request for fees, subject to her compliance with RAP 18.1.

But we deny Therese's request to additionally sanction Jamie under CR 11. CR 11 does not apply when a "more specific sanction rule better fits the situation."[19] Here, RAP 18.9 governs sanctions for a frivolous appeal. Thus, it would be inappropriate to impose additional sanctions under CR 11 for Jamie's frivolous appeal.

We affirm the trial court's decree and grant attorney fees to Therese, subject to her compliance with RAP 18.1.

_Cox, J._

WE CONCUR:

_Trickey, J_

_Dwyer, J._

---

[17] Id.

[18] Id.

[19] Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 340, 858 P.2d 1054 (1993).