FILED
11/17/2025
Court of Appeals
Division I
State of Washington

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SRV CONSTRUCTION, INC.,

                Respondent,

      v.

DEPARTMENT OF LABOR AND
INDUSTRIES OF THE STATE OF
WASHINGTON,

                Appellant.

No. 87048-3-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — The Department of Labor and Industries (the Department) appeals the trial court's order vacating the decision of the Board of Industrial Insurance Appeals (Board) affirming a citation issued to SRV Construction, Inc. (SRV) for two violations of the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW. At issue is whether access to a violative condition is sufficient to show employee exposure. The violative condition in this case is a trench that was more than four feet deep and there were no protective systems in place. SRV was conducting excavation work that required an employee to enter the trench. SRV argues that mere access to the trench was insufficient for exposure because the employee did not enter the deepest part of the trench. Because the employee was or could have easily stepped into the zone of danger, we reverse the trial court and affirm the decision of the Board.

I

A

On April 16, 2019, SRV was digging a trench adjacent to Mukilteo Speedway near the Whidbey Island ferry terminal for the purpose of locating and eventually replacing a sewer main. The ground where the trench was dug consisted of an initial layer of asphalt about 6 to 10 inches thick below which there was compacted aggregate type C soil.[1] A six-inch tall water mitigation pump was placed at the bottom center of the trench. The sides of the trench were vertical and the ends of the trench sloped from the center.

That day, three Department compliance safety and health officers (inspectors) were driving by on their way to the ferry terminal. They observed what looked like a hole in the ground and "a head popped out." The inspectors stopped and initiated an inspection. The inspectors observed an uneven trench that appeared to be more than four feet deep with water pooled at the bottom. The inspectors measured the trench as 49 inches deep from the top of the water pump to the top of the trench. The inspectors told SRV to stop work until proper safety procedures were in place.

On July 10, 2019, the Department issued a citation to SRV for three serious violations:

- Violation 1-1a, WAC 296-155-657(1)(a): the employer did not ensure that a protective system was in place to protect employee from a cave-in.[2]

---

[1] Type C soil includes granular soils, submerged soil, soil from which water is seeping, and submerged rock that is not stable. WAC 296-155-66401.
[2] WAC 296-155-657(1)(a) requires the following:
    (1) Protection of employees in excavations.

- Violation 1-1b, WAC 296-155-655(9)(c): the employer did not ensure it had a support system or another method of protection to protect employees from the possible collapse of part of a sidewalk structure that was undermined.
- Violation 1-2, WAC 296-155-655(10)(b): the employer did not ensure employees were protected from excavated material, loose rock or soil, or other material that could pose a hazard by falling or rolling into excavations.[3]

The Department imposed a penalty of $1,500.

B

SRV appealed the citation. Following an informal conference, the Department issued a corrective notice of redetermination vacating only violation 1-1b. SRV appealed to the Board.

Compliance safety and health officer Daniel Andemarian testified before the Board about the inspection on April 16, 2019. Andemarian testified that while driving he observed a worker with a hard hat on in a "hole in the ground." Andemarian testified that the excavator was being used when they arrived on site. He described that no one was in the trench when they arrived but he observed a worker, Seth Noble, with pants that were wet below the knee, from the calves down. Noble was the only employee he observed with wet pant legs. Andemarian described the weather as dry and somewhat

---

(a) You must protect each employee in an excavation from cave-ins by an adequate protective system designed in accordance with subsections (2) or (3) of this section except when:
(i) Excavations are made entirely in stable rock; or
(ii) Excavations are less than 4 feet (1.22m) in depth and examination of the ground by a competent person provides no indication of a potential cave-in.
[3] WAC 296-155-655(10)(b) requires:
You must protect employees from excavated or other materials or equipment that could pose a hazard by falling or rolling into excavations. Protection must be provided by placing and keeping such materials or equipment at least two feet (.61 m) from the edge of excavations, or by the use of retaining devices that are sufficient to prevent materials or equipment from falling or rolling into excavations, or by a combination of both if necessary.

sunny. He testified that he did not know what Noble was doing when they arrived on site. Andemarian described measuring the trench as 49 inches from the top of the water pump to the edge of the trench. He also testified that he observed the spoils piles as being within two feet of the trench but he did not take a measurement.

Compliance safety and health officer Artemio Gutierrez testified that when he initially saw the person in the trench, he could not see his face or hair color. Gutierrez said he opened the inspection by speaking to the SRV employee in charge of the site, Kelly Wassmann. Gutierrez documented that it was a "clear day." He testified that Wassmann told him that Noble went into the trench to get measurements. Gutierrez described Noble's wet pant legs. He described the soil in the trench as type C. Gutierrez testified that he observed spoils piles that were not set back and were too close the trench. He explained that type C soil is unstable and the most hazardous. Gutierrez also noted "there was a lot of vibration from the road, and there was a lot of heavy machinery all around," including the excavator operating while he was on site.

The Board also heard testimony of construction technical specialist, Erich Smith, a Department employee. Smith testified that the hazards of spoils piles being too close to the edge of an excavation are that the materials could roll into the excavation and the piles add a surcharge load to the excavation which could cause the wall to collapse. He testified that vibration is important in determining soil classification loads.

The Board heard testimony from Noble who worked as a laborer for SRV. Noble testified that he was trained in trench safety. He described working on April 16 to find the existing sewer main which involved shoveling and giving hand signals to the excavator operator, Wassmann:

-4-

> I give him hand signals to dig down a little bit, and then he stops, and then I take over. I shovel down about six inches. He takes a little bit and then gets down to where I shovel. Then I take back over, dig down a little bit, and then he takes back over.

Noble explained that the excavator dug the pothole where the water pump was placed. Noble estimated the pump extended six inches below the surface of the water.

Noble referenced a photo of the trench admitted as exhibit 122. The photo showed the western end of the trench and a piece of green tape about midway up the slope. Noble described standing "right above that green tape," and not going deeper than that while he was shoveling. Noble testified that the deepest he went was no more than three feet and there was no reason for him to go deeper. He said he never stood on the opposite side of the trench where the spoils piles were located. Noble testified that only his boots were wet—not his pants—and explained it was rainy that day and a lot of the material was wet. He testified that he never saw any SRV employee measure the depth of the trench.

The Board also heard testimony from James Brigham, a professional geotechnical engineer. He testified that the spoils pile at the eastern end of the trench posed no hazard to an employee standing on the opposite side of trench. Brigham testified that the spoils pile will stay in its angle of repose and be in a stable condition unless it is rained on or disturbed in some way. He explained that he did not think vibrations would affect an employee on the western side of the trench given the asphalt layer and the compact nature of the soil.

The Board determined Noble was within the "zone of danger." Specific to the spoils pile, the Board was not persuaded that the pile was so stable that there was no

possibility of further falling or rolling into the trench given the presence of vibrations, excavation, and water.  The Board concluded that the violations had been established and affirmed the penalty.  SRV unsuccessfully petitioned the Board for review.  SRV appealed to the Snohomish County Superior Court.

On July 9, 2024, the trial court granted SRV's petition.  The trial court concluded the Department did not establish it was reasonably predictable that Noble would be in the zone of danger created by the deep part of the trench and vacated the Board's decision.

The Department appeals.

II

A

WISHA was adopted in 1973 "to ensure worker safety and supplement the federal Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651-678." Afoa v. Port of Seattle, 176 Wn.2d 460, 470, 296 P.3d 800 (2013).  WISHA's purpose is to assure "safe and healthful working conditions for every man and woman working in the state of Washington," and to "create, maintain, continue, and enhance the industrial safety and health program of the state."  RCW 49.17.010.  The Department is tasked with promulgating regulations that are equal to or exceed OSHA standards.  RCW 49.17.010, .040.

The Department has promulgated rules particular to excavation, trenching, and shoring.  WAC 296-155-650.  The rules apply "to all open excavations made in the earth's surface."  WAC 296-155-650(1).  Employees working around an excavation must be protected from cave-ins except when the excavation is less than four feet in

depth and examination by a competent person reveals no potential for cave-in. WAC 296-155-657(1)(a). Employees must also be protected from loose rock or soil and other materials or equipment that may fall from or roll into an excavation by placing such materials at least two feet from the edge of excavations. WAC 296-155-655(10).

An employer who seriously violates WISHA will be assessed a civil penalty. RCW 49.17.180(2). A serious violation exists "if there is a substantial probability that death or serious physical harm could result from a condition which exists . . . unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." RCW 49.17.180(7).

WISHA governs our review of the Board's decision. RCW 49.17.150(1). In an appeal of the superior court order reversing the decision of the Board, we review the Board's decision directly based on the record before the Board. Bayley Constr. v. Dep't of Lab. & Indus., 10 Wn. App. 2d 768, 782, 450 P.3d 647 (2019). "The Board's findings of fact are conclusive if they are supported by substantial evidence when viewed in the light of the record as a whole." Potelco, Inc. v. Dep't of Lab. & Indus., 194 Wn. App. 428, 434, 377 P.3d 251 (2016); RCW 49.17.150(1). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." Potelco, 194 Wn. App. at 434. We view the evidence in the light most favorable to the party that prevailed before the Board—here, the Department. Potelco, 194 Wn. App. at 434.

We review "questions of law de novo and interpret agency regulations as if they were statutes." Schimmick Constr. Co. Inc. v. Dep't of Lab. & Indus., 12 Wn. App. 2d 770, 778, 460 P.3d 1160 (2020). WISHA statutes and regulations are liberally construed "to achieve their purpose of providing safe working conditions for workers in

-7-

Washington." Frank Coluccio Constr. Co. v. Dep't of Lab. & Indus., 181 Wn. App. 25, 36, 329 P.3d 91 (2014). "Substantial weight is given to the Department's interpretation of WISHA." Schimmick, 12 Wn. App. 2d at 778. But the court has the "ultimate responsibility for interpreting a regulation." Frank Coluccio, 181 Wn. App. at 36.

To establish a prima facie case of a serious violation of WISHA, the Department must prove that: "(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition." Wash. Cedar & Supply Co., Inc. v. Dep't of Lab. & Indus., 119 Wn. App. 906, 914, 83 P.3d 1012 (2003).

B

SRV first argues the violation is de minimis because the trench depth was only one inch over the standard—a violation so slight there was no substantial probability of serious injury or death.[4] SRV points to the inches of asphalt to assert there was only 44 inches of soil and the violation requires 48 inches of soil. We disagree.

WISHA allows the issuance of a notice in lieu of a citation "with respect to de minimis violations which have no direct or immediate relationship to safety or health." RCW 49.17.120. Only two types of excavations are excluded from the requirement to have protective systems, those less than four feet and those made in stable rock. WAC

---

[4] SRV also assigns error to the Board's findings of fact 6, 8, and 9. But SRV provides no argument particular to findings 6, 8, and 9, and thus waives the assigned errors. Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010) ("A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment.").

296-155-657(1)(a).[5]  Neither applies here.  SRV's assertion ignores the plain language of the regulations.  There is no requirement that for the regulation to apply the excavation be made entirely in soil.  And SRV fails to explain why the violation has no direct relationship to safety or health.  SRV's reference to the OSHA trench standard and trench standards in other states being 5 feet or 60 inches deep is unpersuasive. Afoa, 176 Wn.2d at 472 ("WISHA protections must equal or exceed OSHA standards."); see also Schimmick, 12 Wn. App. 2d at 778 ("In interpreting WISHA, we may look to federal decisions that interpret WISHA's federal analogue, [OSHA], but we will not resort to federal case law when Washington law provides controlling precedent.").  The violation was not de minimis.

Substantial evidence also supports the Board's unchallenged findings that the depth of the trench was 49 inches to the top of the water pump and that the water pump was about 6 inches tall.  Unchallenged findings are verities on appeal.  Mid Mountain Contractors, Inc. v. Dep't of Lab. & Indus., 136 Wn. App. 1, 4, 146 P.3d 127 (2006).

For these reasons, WAC 296-155-657(1)(a) applies and the requirements of the standard were not met.  Thus, the Department satisfied the first two elements of a serious violation.

---

[5] WAC 296-155-657(1)(a) requires the following:
(1) Protection of employees in excavations.
(a) You must protect each employee in an excavation from cave-ins by an adequate protective system designed in accordance with subsections (2) or (3) of this section except when:
(i) Excavations are made entirely in stable rock; or
(ii) Excavations are less than 4 feet (1.22m) in depth and examination of the ground by a competent person provides no indication of a potential cave-in.

C

Turning to the third element—employees were exposed to, or had access to, the violative condition—SRV argues the Board erred by concluding that mere access to the trench was sufficient to show Noble was in the zone of danger. SRV argues that Noble was never in, nor was he likely to go into, the deepest part of the trench. In contrast, the Department argues substantial evidence supports that Noble was within the zone of danger. We agree with the Department.

The Department need not prove actual exposure; access to the violative condition is sufficient. Schimmick, 12 Wn. App. 2d at 785 (citing Wash. Cedar & Supply Co., 119 Wn. App. at 914). To establish access, "the Department must show by "reasonable predictability that, in the course of [the workers'] duties, employees will be, are, or have been in the zone of danger." Mid Mountain, 136 Wn. App. at 5 (alterations in original) (citing Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 147, 750 P.2d 1257 (1988)). The zone of danger is "'that area surrounding the violative condition that presents the danger to employees which the standard is intended to prevent.'" Schimmick, 12 Wn. App. 2d at 785-86 (quoting Evergreen Techs., Inc., 18 BL OSHC 1528, 1998 WL 518250, at *7 (No. 98-0348)).

In Adkins, the employee of a roofing contractor was injured when he reached into an exhaust vent to retrieve a tube of caulk that had fallen in. 110 Wn.2d at 131. The trial court determined that WISHA regulations did not apply and our Supreme Court agreed:

> We are unconvinced that it was reasonably predictable that Mr. Adkins would gain access to the fan in the course of his normal duties as a roofer. Indeed, the fan became a hazard only when he consciously and

deliberately removed the cap and entered the vent, an area arguably beyond a roofer's normal work area.

Adkins, 110 Wn.2d at 148.

In Mid Mountain, the violation entailed a trench that was four feet six inches deep on one side and did not have protective systems in place. 136 Wn. App. at 3. Mid Mountain argued there was no violation because its employees were working in a part of the trench that was less than four feet deep and more than five feet from the zone of danger. Mid Mountain, 136 Wn. App. at 5. This court disagreed and distinguished Adkins, determining that access was enough given the normal duties of the employee and his proximity to the zone of danger:

> McCollaum was working at the site as a general laborer. The testimony showed that he had access to the zone of danger. Although McCollaum was not actually within the zone of danger, he was working within close proximity, and it is reasonably likely that he could have walked the short distance and been within the zone of danger. There was nothing to prevent entering the zone during the conduct of his normal duties.

Mid Mountain, 136 Wn. App. at 6.

Here, the zone of danger is the area surrounding the trench that is more than four feet deep. Like the worker in Mid Mountain, Noble had access to the zone of danger while performing his regular duties. Testimony supports, and SRV concedes, that Noble was required to and did enter the trench in the course of his regular duties.[6] While Noble testified that he did not go below the green tape, he also testified he was

---

[6] SRV assigns error to the Board's finding of fact 7 which states, "[Noble] was required to and did enter the trench, up to but not exceeding 2 and ½ to 3 feet of depth in the western portion of the trench to direct the excavation of material to dig down to the existing sewer line." Because SRV concedes that Noble entered the trench up to three feet and otherwise does not provide argument specific to finding of fact 7, the assignment is waived. Brown, 169 Wn.2d at 336 n.11.

shoveling in the trench.  Contrary to SRV's assertion that Noble only stood there giving hand signals, Noble dug in the trench in tandem with the excavator.

SRV distinguishes Mid Mountain and contends that because Noble was trained in trench safety and testified that he had no reason to go into the deep part of the trench, access was not enough.  But the trench was only eight feet long and the violative condition was at the center of the trench where Noble was shoveling.  The evidence supports the Board's memorandum finding that Noble was within one step of the water at the bottom of the trench.[7]  Following the reasoning in Mid Mountain, it does not matter that Noble worked only on one side of the trench because he was working in close proximity to or in the zone of danger.

Viewing the evidence in the light most favorable to the Department, there is a reasonable probability that Noble was within or could have easily stepped a short distance and been within the zone of danger while performing his regular duties. Potelco, 194 Wn. App. at 434.

As to the violation created by the spoils piles, SRV points to the Board's conclusion that workers on the western side of the trench were not in danger from the spoils piles.  But the same zone of danger analysis applies.  The spoils piles were placed too close to the trench.  While spoils piles placed next to a shallow trench— those less than four feet deep—likely pose no danger to employees, the trench in this case was deeper than four feet.  Noble's regular duties placed him in the trench with access to or within the zone of danger.  Additionally, the board wasn't convinced the pile

---

[7] A memorandum finding may be considered as supplementation of formal findings of fact.  Scott R. Sonners, Inc. v. Dep't of Lab. & Indus., 101 Wn. App. 350, 357,3 P.3d 756 (2000); Ellerman v. Centerpoint Prepress, Inc., 143 Wn.2d 514, 523 n.3, 22 P.3d 795 (2001).

was stable and there remained a possibility of it rolling/falling into the trench.  This finding is supported by testimony about the danger of spoils piles when disturbed by vibration.

Substantial evidence supports the Board's findings that Noble was required to and did enter the western portion of the trench, that he had access to the eastern portion of the trench, and that material removed from the trench was placed within two feet of the trench.  Thus, those findings are conclusive and support the Board's legal conclusion that serious violations occurred.  The Board therefore did not err by affirming violations 1-1a and 1-2.

We reverse the trial court and affirm the decision of the Board.

Mann, J.

WE CONCUR:

Birk, J.

Chung, J.