[No. 34054.   *En Banc.*   February 1, 1957.]

R. L. KEETING, *Appellant*, v. PUBLIC UTILITY DISTRICT No. 1
OF CLALLAM COUNTY, *et al.*, *Respondents.*[1]

[1]Reported in 306 P. (2d) 762.

*Severyns & Moffett*, for appellant.

*Houghton, Cluck, Coughlin & Henry*, for respondents.

*The Attorney General* and *Frank P. Hayes, Assistant*, for the state.

OTT, J.—The plaintiff seeks, by this action, to enjoin the expenditure of certain funds of a public utility district, and

a declaratory judgment determining chapter 281, Laws of 1953, p. 743, and chapter 258, Laws of 1955, p. 1046, to be unconstitutional and void in whole or in part. From a judgment denying the injunctive relief and declaring the acts and their severable sections to be constitutional, the plaintiff has appealed.

The appellant contends that chapter 258, Laws of 1955, violates Art. II, § 19, of the state constitution, in two particulars: (1) It embraces more than one subject, and (2) the subject of the act is not adequately expressed in the title. Art. II, § 19, provides: "No bill shall embrace more than one subject, and that shall be expressed in the title."

■ Chapter 258, Laws of 1955, is amendatory of chapter 281, Laws of 1953. We have held that the sufficiency of the title of an amendatory act will not be inquired into, if the new matter is within the purview of the title of the original act. *St. Paul & Tacoma Lbr. Co. v. State*, 40 Wn. (2d) 347, 355, 243 P. (2d) 474 (1952); 1 Sutherland, Statutory Construction (3d ed.), 342, § 1908.

The title of the original act (chapter 281, Laws of 1953) reads as follows:

"AN ACT relating to the conservation, development and utilization of the state's electric resources and of facilities for the generation, transmission and distribution thereof; creating a Washington State Power Commission and prescribing its powers and duties with respect to power and power facilities in the state; *relating to cities and public utility districts and authorizing them to join in and exercize certain powers given to the Washington State Power Commission*; repealing chapter 43.52, RCW; making an appropriation." (Italics ours.)

This title includes the grant of authority to cities and public utility districts to join in and exercise certain powers granted to the Washington state power commission. This provision in the title is broad enough to include the subject of the establishment of an operating agency. The 1953 act granted to the operating agencies certain powers of the power commission. The amendatory act of 1955 granted as additional powers to an operating agency:

" . . . all the powers granted to . . . the state power commission under RCW 43.52.300 (1), (2), (3), (4), (5), (6), (8), (9) and (10), and the provisions of RCW 43-.52.310 and 43.52.350 shall be applicable to such agency." § 4, p. 1054.

The 1955 amendment granted powers to the operating agencies which could have been included originally in the 1953 act, and the subject matter, considering the two acts together, is expressed in the title.

Do the acts embrace more than one subject?

In oral argument, the appellant relied upon *Washington Toll Bridge Authority v. State, ante* p. 520, 304 P. (2d) 676 (1956), in which case we held that an enabling act which granted authority to a governmental agency to build toll roads (only when authorized by the legislature so to do), and which act also authorized a particular toll road, contained two subjects. The cited case does not support appellant's contention, as the facts there presented differ from those in the case at bar.

The single subject in the 1953 act is that of granting authority to operate power facilities having to do with the generation, transmission, and distribution of power. The act granted such authority to the state power commission and to qualified operating agencies. No further legislation is required to accomplish the purpose authorized in the 1953 and 1955 acts. The 1955 act changed the law, in that the operating agencies were granted some additional power, which related to the single subject of authority to generate, transmit, and distribute power.

In *State ex rel. Washington Toll Bridge Authority v. Yelle,* 32 Wn. (2d) 13, 24, 200 P. (2d) 467 (1948), we said:

"The purposes of this constitutional mandate [Art. II, § 19] are threefold: (1) to protect and enlighten the members of the legislature against provisions in bills of which the titles give no intimation; (2) to apprise the people, through such publication of legislative proceedings as is usually made, concerning the subjects of legislation that are being considered; and (3) to prevent hodge-podge or log-rolling legislation."

See, also, *Power, Inc. v. Huntley,* 39 Wn. (2d) 191, 198, 235 P. (2d) 173 (1951).

When the two titles are considered together, the purposes announced by the rule in the cited cases are accomplished. The titles here questioned fall squarely within the rule announced in *Gruen v. State Tax Comm.,* 35 Wn. (2d) 1, 22, 211 P. (2d) 651 (1949), in which we said:

"Where the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated, are properly included in the act and are germane to its title."

We hold that chapter 281, Laws of 1953, and chapter 258, Laws of 1955, are not violative of Art. II, § 19, of the state constitution.

Are any of the severable sections, or parts thereof, unconstitutional?

Appellant contends that § 4, chapter 258, Laws of 1955, p. 1054, is violative of Art. VIII, § 5, of the state constitution, which reads as follows: "The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation."

We find no merit in this contention for the reason that the credit of the state is not involved. Funds of a municipal corporation or public utility district, raised by taxation or by revenue, are not state funds but are funds belonging to the entity which the legislature created.

Appellant asserts that § 3, chapter 258, Laws of 1955, p. 1051, delegates a legislative function to the director of conservation and development without sufficient legislative standards.

The act provides that, after the legislative body of a public utility district or city has approved joint participation with another or others for the purpose of establishing an operating agency, the following procedure for the establishment of an operating agency must be followed:

(1) Two or more public utility districts or cities shall

make application to the director of conservation and development.

(2) The application must contain the following: (a) name and address of the participants and certified copy of the enacting resolution, (b) description of the project and principal project works, (c) general location of the project and name of the stream on which the project is to be located, (d) proposed use or market for the power, (e) general statement of the loads and resources of the participants, and (f) a statement of the proposed method of financing the preliminary studies.

(3) Within ten days after the application is filed, the director of conservation and development must publish notice for four consecutive weeks in the county where the project is located.

(4) Objections to granting the application must be filed with the director within a specified time.

(5) Within ninety days, the director shall conduct a hearing or make findings.

(6) After the expiration of a specified time, if no action has been taken by the director of conservation and development, the application shall be deemed approved.

(7) In the proper case, the director is required to make findings

". . . (a) that the statements set forth in said application are substantially correct; (b) that the contemplated project is such as is adaptable to the reasonably foreseeable requirements of the members and such other public utilities as indicate a good faith intention by contract or by letter of intent to participate in the use of such project; (c) that no other public utility objects to the formation of such operating agency, which public utility had on file prior to the filing of the application for such operating agency, an application for, or a permit or license from an agency of the state or an agency of the United States, whichever has primary jurisdiction, pertaining to such projects; (d) that adequate provision will be made for financing the preliminary engineering, legal and other costs necessary thereto; . . ." § 3, p. 1052.

(8) The director shall enter an order establishing the agency and authorizing it to proceed, or deny the application.

(9) Any aggrieved party has a right of appeal from the order or findings of the director of conservation and development to the superior court.

The legislative standards to guide the director of conservation and development in granting the application are enumerated in (7) above. Are these standards sufficient?

■ Amendment 7, of the state constitution, provides in part that "The legislative authority of the state of Washington shall be vested in the legislature, . . . " It is unconstitutional for the legislature to abdicate or transfer to others its legislative function. It is not unconstitutional for the legislature to delegate administrative power. In so doing, the legislature must define (a) what is to be done, (b) the instrumentality which is to accomplish it, and (c) the scope of the instrumentality's authority in so doing, by prescribing reasonable administrative standards. See *Uhden, Inc. v. Greenough*, 181 Wash. 412, 43 P. (2d) 983, 98 A.L.R. 1181 (1935); *State ex rel. Washington Toll Bridge Authority v. Yelle*, 195 Wash. 636, 82 P. (2d) 120 (1938); *Yakus v. United States*, 321 U. S. 414, 88 L. Ed. 834, 64 S. Ct. 660 (1944).

■ Applying the rule announced to the statutes here in question, in delegating administrative power to the director of conservation and development, the legislature defined (a) what was to be done (the approval of the establishment of operating agencies), (b) the instrumentality which was to accomplish it (the director of conservation and development), and (c) reasonable standards to guide the director in the exercise of the delegated power (these administrative standards, enumerated in (7) above, are definite and specific as to need, feasibility, and practicability). Similar standards have been sanctioned by this court, and we hold that the standards here in question are sufficient. See *State ex rel. Washington Toll Bridge Authority v. Yelle*, 195 Wash. 636, 82 P. (2d) 120 (1938); *Kelleher v. Minshull*, 11 Wn. (2d) 380, 119 P. (2d) 302 (1941); *Senior Citizens*

*League v. Department of Social Security*, 38 Wn. (2d) 142, 228 P. (2d) 478 (1951).

■ Appellant next contends that the portion of § 3, chapter 258, Laws of 1955, which permits an operating agency to become established by inaction on the part of the director for a specified time, is an unlawful delegation of a legislative function. We find no merit in this contention. The legislature has defined the standards which shall govern the director in the exercise of his duties. In delegating such authority, the legislature can require him to act within a limited time or the application "shall be deemed to have been approved." In effect, the legislature has said that inaction on the part of the director is tantamount to a finding of approval. From such approval, any aggrieved party has a right of appeal to the courts, as above indicated.

The appellant next contends that, under the act, the salary of a public utility district commissioner could be increased from twenty-five dollars a day to fifty dollars a day by appointing such commissioner to the operating agency board. It is contended that the salary provision of the act violates Art. XI, § 8, of the state constitution, which provides that the salary of a municipal officer shall not be increased or diminished during his term of office.

■ The salary of a public utility district commissioner for the performance of his district duties is not increased during his term in office. A public utility district commissioner is not elected to perform full-time service. He is paid only for the days during which services are rendered and is not prohibited from engaging in other remunerative activities. In the event he should be selected to serve on the operating agency board, on such days he would not be receiving compensation as a public utility district commissioner, but as a member of the operating agency board. Therefore, the salary allowance for a commissioner of a district, when performing duties as such, is not increased by the act.

The appellant's final contention is that the respondents are acting arbitrarily and without authority of law in the

following particulars: (1) The proposed development constitutes more than one project, (2) the sale of water is without authority, (3) the location of the principal office in Seattle is illegal, (4) there is no adequate provision for the control of funds of the operating agency, and (5) membership requirements for the proposed operating agency are vague and indefinite.

Items Nos. 1 and 5 are factual determinations upon which the court made specific findings of fact adverse to the appellant. The record before us sustains the court's findings in this regard.

Item No. 2 is a mixed question of law and fact. The court found that the water proposed to be sold by the operating agency was "falling water." Sections 1 and 4, chapter 258, Laws of 1955, pp. 1047, 1054, grant to operating agencies authority to sell and dispose of falling water as an incidental feature of a proposed project.

With regard to item No. 3, the state power commission, being an agency of the state, is required to have its principal office at Olympia. *State ex rel. Lemon v. Langlie,* 45 Wn. (2d) 82, 273 P. (2d) 464 (1954). However, the operating agency is a municipal corporation, and as such, its membership may designate the place of its principal office at such location within the state of Washington as it deems reasonably suitable for the transaction of its business.

With reference to item No. 4, the legislature granted to the operating agencies the power to make rules and conduct their business in such manner as the majority of the membership should determine. In the instant case, concerning the control of funds of the operating agency, the following rule was adopted:

"The board shall also elect an auditor, and a treasurer who shall be a person occupying the office of state treasurer or treasurer of one of the member public utility districts; provided, that if the board finds that no person occupying such office is available to serve as its treasurer, within convenient distance from its principal office, it may designate any other person to serve as treasurer."

The proposed resolution is in conformity with the authority granted by the legislature.

We find no merit in any of appellant's contentions with reference to the alleged arbitrary or illegal conduct of the respondents.

For the reasons stated, the judgment is affirmed.

HILL, C. J., MALLERY, SCHWELLENBACH, DONWORTH, FINLEY, ROSELLINI, and FOSTER, JJ., concur.