[No. 42033.    En Banc.    August 24, 1972.]

BARRY AND BARRY, INC., et al., *Respondents*, v. THE DEPARTMENT OF MOTOR VEHICLES et al., *Appellants*.

*Slade Gorton, Attorney General,* and *David R. Minikel, Assistant,* for appellants.

*Culp, Dwyer, Guterson & Grader, Robert A. Keolker,* and *David F. Berger,* for respondents.

FINLEY, J.—The issue in this case is the constitutional validity of a regulation of a state administrative agency; namely, Washington Administrative Code 308-33-010 of the Department of Motor Vehicles, which established a schedule of maximum fees which can be charged by employment agencies. The trial court held this administrative regulation invalid on the grounds that (1) the right to exercise such administrative authority was not delegated by statute, and (2) in the alternative, the delegation of such authority constituted an improper and unconstitutional delegation of legislative authority without appropriate standards. On appeal here we reverse the decision of the trial court.

The facts are uncomplicated and undisputed. Chapter 19.31 of RCW, the Employment Agency Act, established statutory standards for certain employment agency practices and fees, and provides for implementation and administration of the act by the Director of the Department of Motor Vehicles. In addition, RCW 19.31.070(1) provides that:

> The director shall administer the provisions of this chapter and shall issue from time to time reasonable rules and regulations for enforcing and carrying out the provisions and purposes of this chapter.

Ostensibly acting under the authority granted by this section, the Director of the Department of Motor Vehicles on February 26, 1970, promulgated a number of rules, including WAC 308-33-010, involved in this case. This regulation

established a schedule of maximum fees which can be charged by employment agencies, based on a percentage of the monthly salary of the position found for a client of an agency.[1]

Plaintiffs (employment agencies and counselors in these agencies) brought this action seeking a declaratory judgment and an injunction restraining the department from establishing such a fee schedule. Their motion for summary judgment preceding trial was granted, and an injunction was issued. The Department of Motor Vehicles has appealed.

The first issue on appeal is whether the right to promulgate a schedule of maximum fees for employment agencies was actually delegated to the Director of the Department of Motor Vehicles by the Employment Agency Act. Appellant Department of Motor Vehicles contends that such authority *was* delegated. We agree.

Our conclusion is based on the language of the statute itself, RCW 19.31.050, which provides:

Prior to using any contract or fee schedule in the transaction of its business with applicants, each employment agency shall obtain the director's approval for the use of such contract or fee schedule.

[1] WAC 308-33-010 provides that:
"No employment agencies after April 1, 1970, may contract to charge applicants fees in excess of the fee schedule shown below.

| "Annual Salary | Monthly Salary | Maximum Percentage of Expected Monthly Compensation |
|---|---|---|
| Less than $2400 | Less than $200 | 30% |
| $2400 - 2699.99 | $200 - 224.99 | 35% |
| $2700 - 3599.99 | $225 - 299.99 | 40% |
| $3600 - 4199.99 | $300 - 349.99 | 50% |
| $4200 - 5999.99 | $350 - 499.99 | 60% |
| $6000 - 9599.99 | $500 - 799.99 | 65% |
| $9600 - | $800 - | No maximum fee regulation |

"PROVIDED, That an employment agency may under extreme circumstances apply to the Director for permission to charge fees in excess of the above fee schedule. Such a request, however, is not effective until affirmatively acted upon by the Director."

We believe that the power to approve fee schedules includes the power to establish a listing of fees, which the state agency will approve automatically. As noted above, RCW 19.31.070(1) provides that:

The director shall administer the provisions of this chapter and shall issue from time to time reasonable rules and regulations for enforcing and carrying out the provisions and purposes of this chapter.

We are convinced that in a situation such as this, where an administrative official is authorized by statute to approve contracts or fee schedules in specified individual cases, and is also authorized to issue rules and regulations to carry out the purposes of that statute, then he may issue rules or guidelines delineating the types of contracts or fee levels for which approval will be automatic under usual circumstances. *See State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N.W. 929 (1928). This is all that was done in the instant case; the action of the director in promulgating the schedule of maximum fees was within the authority delegated to him by the legislature.

The second, and more difficult, issue in this appeal is whether the authority given to the Director of the Department of Motor Vehicles to approve fee schedules and set maximum fees to be charged by employment agencies is an unconstitutional delegation of legislative authority without appropriate legislative standards. Appellant Department of Motor Vehicles contends that the authority granted to the department—although unfettered by any so-called legislative standards—is valid and constitutional. We agree.

We have previously held that:

It is not unconstitutional for the legislature to delegate administrative power. In so doing, the legislature must define (a) what is to be done, (b) the instrumentality which is to accomplish it, and (c) the scope of the instrumentality's authority in so doing, by prescribing reasonable administrative standards.

*Keeting v. PUD 1,* 49 Wn.2d 761, 767, 306 P.2d 762 (1957); *Caffall Bros. Forest Prods., Inc. v. State,* 79 Wn.2d 223, 484

P.2d 912 (1971); *Markham Advertising Co. v. State*, 73 Wn.2d 405, 439 P.2d 248 (1968). More narrowly and more specifically, we have stated that

"[t]he legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

*Carstens v. DeSellem*, 82 Wash. 643, 650, 144 P. 934 (1914); *see Uhden, Inc. v. Greenough*, 181 Wash. 412, 43 P.2d 983, 98 A.L.R. 1181 (1935); *Morgan v. Department of Social Security*, 14 Wn.2d 156, 127 P.2d 686 (1942); *Clark v. Dwyer*, 56 Wn.2d 425, 353 P.2d 941 (1960).

We are now convinced that, *when described and limited in this manner*, the requirement of specific legislative standards for the delegation of legislative power is excessively harsh and needlessly difficult to fulfill. We hold that the delegation of legislative power is justified and constitutional, and the requirements of the standards doctrine are satisfied, when it can be shown (1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that *procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power*. We are convinced that these two conditions are met in the instant case, and that the challenged delegation of legislative power is valid and constitutional.

We are convinced and have no hesitancy in saying that the strict requirement of exact legislative standards for the exercise of administrative authority has ceased to serve any valid purpose. In addition to lacking purpose, the doctrine in several respects impedes efficient government and conflicts with the public interest in administrative efficiency in a complex modern society.

First, by preventing the working out of certain administrative policies at the administrative level on a case-by-case basis, the doctrine frustrates the efficient operation of the appropriate governmental processes. The human intellect is

weakest when dealing with abstraction and generality, strongest when considering narrow, concrete, and particular problems. Therefore, the best way to work out policy is often for the legislative body to avoid generalization and to assign to an administrative agency the task of working out such policy on a case-by-case basis. 1 K. Davis, *Administrative Law Treatise* § 2.08 (1958). We are convinced that in the instant case the legislature, after defining his function in general terms, entrusted the director of the Department of Motor Vehicles with full authority and responsibility for appropriate action to consummate legislative policy, reasoning that as a common sense and practical matter, the director would be more capable than the legislature of formulating reasonably appropriate standards for the approval of employment agency fees, based on his case-by-case experience with the contracts presented to him for approval.

Second, requiring the legislature to lay down exact and precise standards for the exercise of administrative authority destroys needed flexibility. Normally, the legislature meets only biennially. It does not have the opportunity to adopt a fee schedule and then alter it periodically to meet the changing needs of employment agencies and the public as revealed by administrative experience. In addition, it seems probable that various economic factors would affect any meticulously prescribed legislative standards, and it is doubtful that such standards could be attuned to coincide with these factors on a biennial basis.

Finally, a strictly construed standards doctrine is logically unsound and legally meaningless. The needs and demands of modern government require the delegation of legislative power without *specific* guiding standards. In attempting to satisfy requirements of precise standards, the courts have been forced to rely on vague adjectives of generality such as "reasonable" or "appropriate." We think that it is time to abandon the notion that the presence or absence of vague verbalisms like "public interest" or "just and reasonable" make all the difference between valid legislation and unlawful delegation. The possibility of basing

the decision as to the constitutionality of a statute on the existence or nonexistence of such vague standards leads to the undesirable result that a particular delegation is more likely to be valid if it is attached to governmental action of which the reviewing court approves than if it authorizes action the court considers unwise.

For the above reasons we are convinced that:

The non-delegation doctrine can and should be altered to turn it into an effective and useful judicial tool. Its purpose should no longer be either to prevent delegation of legislative power or to require meaningful statutory standards; its purpose should be the much deeper one of protecting against unnecessary and uncontrolled discretionary power. . . . The focus of judicial inquiries thus should shift from statutory standards to administrative safeguards and administrative standards. As soon as that shift is accomplished, the protections should grow beyond the non-delegation doctrine to a much broader requirement, judicially enforced, that as far as is practicable administrators must structure their discretionary power through appropriate safeguards and must confine and guide their discretionary power through standards, principles, and rules.

1 K. Davis, *Administrative Law Treatise* § 2.00 (Supp. 1970).

Not only is the requirement of specific standards unjustifiable in terms of logic or legal reasoning; it is also in tacit disrepute in the courts, particularly in the federal system. The Supreme Court of the United States has sustained many standardless delegations of congressional authority. *See Fahey v. Mallonee,* 332 U.S. 245, 91 L. Ed. 2030, 67 S. Ct. 1552 (1947); *McKinley v. United States,* 249 U.S. 397, 63 L. Ed. 668, 39 S. Ct. 324 (1919). In *American Trucking Ass'ns v. Atchison, T. & S.F. Ry.,* 387 U.S. 397, 18 L. Ed. 2d 847, 87 S. Ct. 1608 (1967), the court upheld the ICC's regulation of the piggyback (trailer on flatcar) system, even though Congress had not laid down meaningful standards to guide such regulation. In the absence of a standard, the court held that national transportation policy was the standard by which the correctness of the commis-

sion's actions would be measured. Similarly, in *United States v. Southwestern Cable Co.,* 392 U.S. 157, 20 L. Ed. 2d 1001, 88 S. Ct. 1994 (1968), the court upheld the FCC's regulation of community antenna television, even though community antenna television did not exist when the Communications Act was enacted in 1934 and there were no meaningful standards to guide the commission's regulation.

It may be argued that whatever the freedom of the federal courts to ignore the requirement of precise legislative standards for delegated authority, its continued existence is mandated in the state of Washington by Const. art. 2, § 1 (amendment 7), which provides that "[t]he legislative authority of the state of Washington shall be vested in the legislature . . ." However, there is a similar provision in U.S. Const. art. 1, § 1: "[a]ll legislative powers herein granted shall be vested in a congress of the United States . . ." The Supreme Court of the United States has not regarded this provision as prohibitory in upholding the delegations of legislative authority without meaningful standards in the above-mentioned decisions in *American Trucking Ass'ns* and *Southwestern Cable Co.*

In our judgment, these provisions of the Washington State and United States Constitutions mean only that legislative power is delegated *initially and fundamentally* to the legislative bodies. We believe that one of the legislative powers granted by these provisions is the power to determine the amount of discretion an administrative agency should exercise in carrying out the duties granted to it by the legislature. To construe these provisions as confining the exercise of legislative power to the legislative bodies, would be to read them as limitations of power rather than as grants of power. We may assume that if the framers had intended to so limit the power of the legislative bodies, they would have done so expressly, rather than by implication.

In view of the marked similarity in the provisions of the two constitutions, it is relevant to note that the first Con-

gress, which was made up largely of the same men who wrote the United States Constitution,

> did not bother with standards when it delegated to the courts the power "to make and establish all necessary rules for the orderly conducting of business in the said courts, provided such rules are not repugnant to the laws of the United States," when it delegated to district courts power to impose "whipping, not exceeding thirty stripes" without a guiding standard, when it provided for military pensions "under such regulations as the President of the United States may direct," when it authorized the President to fix the pay, not more than prescribed maxima, for military personnel wounded or disabled in the line of duty . . .

(Footnotes omitted.) 1 K. Davis, *Administrative Law Treatise* § 2.00-3 (Supp. 1970).

Since we are convinced that the standards doctrine, when interpreted to require *specific or precise standards,* is without purpose or rational justification, is ignored in the federal courts, and is not mandated by the United States or Washington State Constitutions, we believe that it should be at least relegated to a minor position in the juristic firmament, if not abolished. Protection against arbitrary and unjustified administrative action can be more effectively obtained as follows:

■ First, the legislature must provide standards or guidelines which indicate in general terms what is to be done and the administrative body which is to do it. *See Keeting v. PUD 1,* 49 Wn.2d 761, 306 P.2d 762 (1957). The legislature has done so in the instant case. RCW 19.31.070 indicates that reasonable rules and regulations for enforcing and carrying out the provisions of the Employment Agency Act are to be issued from time to time by the Director of the Department of Motor Vehicles. While the act provides no precise standards to be used in issuing such rules and regulations, the act *is* clear in indicating that such rules and regulations *may be issued administratively,* specifically *by the Director of the Department of Motor Vehicles.*

Second, adequate procedural safeguards must be provided, in regard to the procedure for promulgation of the rules and for testing the constitutionality of the rules after promulgation. *See Jordan v. State Bd. of Ins.*, 160 Tex. 506, 334 S.W.2d 278 (1960). Such safeguards can ensure that administratively promulgated rules and standards are as subject to public scrutiny and judicial review as are standards established and statutes passed by the legislature.

In the instant case, the applicable provisions of the Administrative Procedure Act, chapter 34.04 of RCW, ensure that interested parties will be heard *before* a rule is adopted. The act similarly provides for judicial review of administrative rules and standards to protect against arbitrary and capricious administrative action *after* it has occurred. The framework of procedural safeguards within which the challenged fee standards were established is adequate and therefore does not render unconstitutional the administrative requirements or standards issued within that framework.

Since (1) the legislature has set forth guidelines defining in general terms what is to be done and what administrative body or officer is to do it, and (2) adequate procedural safeguards exist to control arbitrary administrative action and the abuse of discretionary power; we are convinced that the challenged delegation of legislative power is valid and constitutional. Our conclusion finds support in the case law of other jurisdictions.

In *Blackman v. Board of Liquor Control*, 95 Ohio App. 177, 113 N.E.2d 893 (1952), the court was faced with a situation in which the Ohio legislature had conferred upon the board the authority to fix minimum prices for wine. The court upheld the delegation of legislative power, even though the legislature had not set out a precise standard in its delegation.

In *Pressman v. Barnes*, 209 Md. 544, 555, 121 A.2d 816, 822 (1956), the court upheld a delegation without specific standards, stating:

where the discretion to be exercised relates to police

regulations for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative officials to carry out the legislative will, legislation delegating such discretion without such restrictions may be valid.

Similarly but more specifically, in *State ex rel. Wisconsin Inspection Bureau v. Whitman*, 196 Wis. 472, 220 N.W. 929 (1928), the challenged statute provided that:

> "All regulations or rules of any such rating bureau shall be filed with the commissioner of insurance, and no such regulations or rules shall be in force . . . after written order by the commissioner of insurance, disapproving such regulations or rules."

196 Wis. at 483. The court in its opinion granted that the commissioner had the power to prescribe the rules and regulations merely by way of disapproving them (as in the instant case), and that no specific standard was stated. But the court upheld the delegation, stating that:

> [A]ny attempt on the part of the legislature to prescribe a standard would result in effect in a prescription of the rules and regulations themselves,—in other words, the subject matter does not admit of the application of any except the most general standards.

196 Wis. at 508.

Similarly, the delegated power in the instant case does not admit of any precise or specific standards. Because such standards, if required, would not be standards at all, but rather highly specific fee schedules possessing all the specificity of the challenged administrative rules with none of the accompanying administrative expertise and flexibility; and because protection against arbitrary administrative action is in this case assured by legislative delegation, administrative standards, and procedural safeguards; we believe that the schedule of employment agency maximum fees herein challenged is a valid and constitutional delegation of legislative power. Accordingly, the decision of the lower court granting summary judgment for respondents is re-

versed and the cause is remanded for entry of judgment in favor of the Department of Motor Vehicles.

HAMILTON, C.J., ROSELLINI, HUNTER, HALE, NEILL, STAFFORD, WRIGHT, and UTTER, JJ., concur.

Petition for rehearing denied November 6, 1972.