FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SLIDEWATERS LLC,
*Plaintiff-Appellant*,

v.

WASHINGTON STATE DEPARTMENT
OF LABOR AND INDUSTRIES; JAY
ROBERT INSLEE, Governor, in his
official capacity,
*Defendants-Appellees.*

No. 20-35634

D.C. No.
2:20-cv-00210-
TOR

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted June 7, 2021
Seattle, Washington

Filed July 8, 2021

Before: Ronald M. Gould, Richard R. Clifton, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's denial of injunctive relief and dismissal of state and federal claims in an action brought by the owner of a waterpark in Chelan County, Washington who challenged the State's restrictions, imposed in response to the COVID-19 pandemic, prohibiting the waterpark from operating during 2020 and imposing capacity limits in 2021.

The panel held that defendants had the authority under Washington law to impose the restrictions and that doing so did not violate plaintiff's asserted rights under the U.S. Constitution. Addressing the state law claims, the panel held that the governor had the lawful authority under Revised Code of Washington § 43.06.010(12) to issue Proclamation 20-05, as the pandemic was both a public disorder and a disaster affecting life and health in Washington. The panel further held that the State Department of Labor and Industries, in promulgating an emergency rule as part of the state's efforts to curb the pandemic, Washington Administrative Code § 296-800-14035, acted within its scope of authority. The panel held that the executive branch's actions did not violate the principle of separation of powers with regard to the legislative branch; and the actions of defendants also did not violate the principle of separation of powers with regard to the judicial branch. The panel rejected plaintiff's argument that state-level entities were not the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

proper entities to address the pandemic and that the state of emergency and resulting state actions unlawfully impinged on the authority of county health officials.

The panel held that the substantive due process rights of the waterpark, its owners, and its employees were not violated by defendants' actions. The panel held that the right to pursue a common calling or use property as one wishes are not considered fundamental rights and defendants provided a rational basis for the proclamations and related rules.

The panel held that plaintiff's application for injunctive relief was properly denied, and the district court did not err in consolidating plaintiff's motion for a preliminary injunction with a hearing on the merits or in reaching plaintiff's state law claims. The panel noted that the district court gave clear and unambiguous notice to the parties of its intent to consolidate under Federal Rule of Civil Procedure 65(a)(2) and provided a schedule for supplemental submissions. Plaintiff was not substantially prejudiced by the consolidation, and the district court did not abuse its discretion in how it organized its consideration of the issues before it.

Finally, the panel held that the state law claims did not require abstention under the *Pullman* doctrine and certification of questions to the Washington Supreme Court was not required in this instance, as the answers to the state law questions were not uncertain.

**COUNSEL**

Sydney Phillips (argued) and Robert A. Bouvatte Jr., Freedom Foundation, Olympia, Washington, for Plaintiff-Appellant.

Brendan Selby (argued) and Zackary Pekelis Jones, Assistant Attorneys General, Complex Litigation Division; Jeffrey T. Even, Deputy Solicitor General; Robert W. Ferguson, Attorney General; Office of the Attorney General, Seattle, Washington; for Defendants-Appellees.

**OPINION**

CLIFTON, Circuit Judge:

Plaintiff Slidewaters LLC operates a waterpark in Chelan County, Washington. In response to the COVID-19 pandemic, the State of Washington imposed restrictions which prohibited the waterpark from operating during 2020. Slidewaters has been permitted to open in 2021, but the restrictions continue to impact Slidewaters by limiting the number of patrons in the waterpark. Slidewaters contends that the restrictions are unlawful under Washington state law and also violate Slidewaters' federal constitutional rights. It sought a preliminary injunction to restrain Defendants, Governor Jay Inslee and the State Department of Labor and Industries ("L&I"), from enforcing the restrictions. The district court denied injunctive relief and dismissed Slidewaters' action with prejudice. Slidewaters appeals that decision on the merits and adds several procedural objections to the district court's treatment of the case.

We conclude that Defendants have the authority under Washington law to impose the restrictions and that doing so does not violate Slidewaters' asserted rights under the U.S. Constitution.  Slidewaters' application for injunctive relief was properly denied and its claims were properly dismissed. We also conclude that the district court did not err in consolidating Slidewaters' motion for preliminary injunction with a hearing on the merits or in reaching Slidewaters' state law claims.  We affirm the judgment of the district court.

## I.  Background

COVID-19 is a novel, potentially deadly, severe acute respiratory illness caused by a virus that is most commonly transmitted person to person.  *See S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief). Transmission can occur even when the infected person does not have symptoms and does not know of the infection.  *Id.* Governments at all levels instituted restrictions to curb the transmission of the virus.  *See, e.g.*, *id.*  Even with the restrictions, it is estimated that over 114.6 million people in the United States became infected.  CDC, *Estimated Disease Burden of COVID-19* (May 19, 2021), https://www.cdc.gov /coronavirus/2019-ncov/cases-updates/burden.html   (last visited June 29, 2021).   Over 600,00 people in the United States have died from COVID-19. CDC,  COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/ #datatracker-home (last visited June 29, 2021).   In Washington, there have been over 451,200 cases, 25,400 hospitalizations, and 5,900 deaths.  Wash. State Dep't of Health, *COVID-19 Data Dashboard*, https://www.doh.wa.g ov/Emergencies/COVID19/DataDashboard (last visited June 29, 2021).

In response to the initial COVID-19 outbreak in Washington, Governor Inslee declared a State of Emergency in Proclamation 20-05, on February 29, 2020. The proclamation instructed state departments to "utilize state resources and to do everything reasonably possible to assist affected political subdivisions in an effort to respond to and recover from the outbreak." Additional proclamations have been issued since then as the pandemic has continued, but Proclamation 20-05 remains in effect.

L&I promulgated an emergency rule, Washington Administrative Code § 296-800-14035 (the "L&I COVID-19 Rule"), as part of the state's efforts to curb the COVID-19 pandemic. The rule creates an enforcement mechanism for the proclamations' restrictions on businesses by prohibiting employers from allowing employees to work if the business activity is prohibited. Wash. Admin. Code § 296-800-14035 (2020). If an employee is found working when the business activity is prohibited under the proclamations, the employer can be issued a citation that could result in a fine.

Slidewaters is normally open in the summer, from the Saturday prior to Memorial Day to Labor Day. However, the applicable state plan, in the form of the "Safe Start, Stay Healthy Plan" followed by the "Healthy Washington – Roadmap to Recovery," prohibited Slidewaters from operating until its part of the state reached certain public health goals, including being below a given level of new cases and hospitalizations. That meant that Slidewaters was unable to operate legally in the summer of 2020 as the region

including Chelan County never reached the public health goals which would have allowed Slidewaters to open.[1]

Now, in the summer of 2021, conditions have improved such that, under the restrictions that currently apply, Slidewaters can operate, albeit subject to limits which include restricting its capacity to 50 percent.  It reopened as scheduled on May 29, 2021, and Slidewaters reports that it is operating in accordance with the current Washington State requirements.

## II.  Procedural History

Slidewaters filed a complaint in the Superior Court for Chelan County in early June 2020.  It was removed by Defendants to the U.S. District Court for the Eastern District of Washington a few days later, and the litigation proceeded thereafter in district court.

In its complaint, Slidewaters sought an injunction against Proclamation 20-05 and the emergency rule issued by L&I. Slidewaters filed a motion for a temporary restraining order, which was denied by the district court.

Shortly after the denial of the TRO, Defendants filed in the district court an answer to the complaint and a counterclaim under Washington law.  The counterclaim sought a declaratory judgment that Slidewaters' conduct

---

[1] Despite the prohibition, Slidewaters resumed operations on June 21, 2020, and opened in violation of state law for thirty days.  Slidewaters was cited by the Department of Health for the violation, and was fined by the L&I.  Slidewaters reports that it is contesting the fine and contends that success in this appeal could result in the fine being set aside.

violated Proclamation 20-05 and an injunction against Slidewaters operating its facilities in violation of the proclamation.

On the same day that Defendants' responsive pleading was filed, Slidewaters filed a motion in the district court for a preliminary injunction and requested expedited treatment of that motion by the district court. The request for expedited treatment was granted, over opposition by Defendants. In granting that request, the district court announced that it was inclined to exercise its discretion to treat the request for a preliminary injunction as if it were a motion for a permanent injunction, and it set a schedule for the parties to supplement previous filings if they desired.

After receiving supplemental filings, the district court denied the requests for injunctive relief, both preliminary and permanent, and dismissed Slidewaters' complaint with prejudice. In the order in which it dismissed Slidewaters' complaint, the district court noted that the dismissal of the complaint, including its federal claim, meant that there was no longer a basis for the court to exercise supplemental jurisdiction over the remaining state law claim, namely the counterclaim asserted by Defendants. The district court remanded Defendants' state law counterclaim. This claim was later dismissed by Defendants. *See* Motion to Dismiss by Defendants, *Slidewaters v. L&I*, No. 20-2-00389-04 (Wash. Super. Ct., Chelan Cnty. July 17, 2020).

## III.    Slidewaters' State Law Claims

Slidewaters appeals the district court's denial of its motion for preliminary injunction and dismissal of its state law claims. Slidewaters raises four challenges to the legality

of the emergency proclamations and the rule promulgated by L&I. First, Slidewaters argues that Proclamation 20-05 is unlawful because the COVID-19 pandemic does not meet the criteria in Revised Code of Washington § 43.06.010(12) to declare a state of emergency. Second, Slidewaters alleges that the L&I COVID-19 Rule, Washington Administrative Code § 296-800-14035, is unlawful because the rule's subject matter falls outside L&I's scope of rulemaking authority. Third, Slidewaters argues that Defendants' actions violate the principle of separation of powers by usurping the power of the legislature through the emergency declaration and removing the judicial branch by having administrative agencies adjudicate violations of the L&I COVID-19 Rule. Finally, Slidewaters alleges that the state is improperly seizing power from local health departments in its efforts to curb the pandemic and that these local departments are the only entities that can regulate health under Washington law.

We review denial of an injunction for abuse of discretion, the underlying determination of the statutes' constitutionality de novo, and any underlying findings of fact for clear error. *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1208 n.7 (9th Cir. 2010). The underlying facts do not appear to be in dispute here.

## A. *Proclamation 20-05*

Slidewaters argues that the governor unlawfully declared a state of emergency under Revised Code of Washington § 43.06.010(12). The statute states: "The governor may, after finding that a public disorder, disaster, energy emergency, or riot exists within this state or any part thereof which affects life, health, property, or the public peace, proclaim a state of

emergency in the area affected . . . ." Wash. Rev. Code § 43.06.010(12) (2014).

Slidewaters argues that the COVID-19 pandemic is not "a public disorder, disaster, energy emergency, or riot," so the governor exceeded his lawful authority when he declared a state of emergency in Proclamation 20-05. Defendants counter that the pandemic is both a "disaster" and a "public disorder," so the declaration of a state of emergency was lawful.

As this is a matter of state law interpretation, we start by looking to the state's highest court to see if it has opined on the issue. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). The Washington Supreme Court has not directly addressed the legality of Proclamation 20-05 and the subsequent proclamations.

We then turn to the words of the statute itself, applying Washington principles of statutory interpretation. *See Powell's Books, Inc.*, 622 F.3d at 1209. The Washington Supreme Court instructs that in reading a statute, one must look at the plain meaning of a statute's words as defined in a dictionary. *State v. Smith*, 405 P.3d 997, 1001 (Wash. 2017).

The district court focused on the term "public disorder" in concluding that the declaration of a state of emergency was within the governor's authority. We agree that the COVID-19 pandemic can be understood as a "public disorder" affecting "life [and] health" in Washington. Wash. Rev. Code § 43.06.0101(12). It has caused an "[a]bsence or undoing of order or regular arrangement" as well as "confusion." *Disorder*, Oxford English Dictionary,

https://www.oed.com/view/Entry/54859 (last visited June 29, 2021).

In addition, the COVID-19 pandemic is appropriately described as a "disaster," the term used in Proclamation 20-05, and the subsequent proclamations. The term "disaster" means an "event or occurrence of a ruinous or very distressing nature; a calamity." *Disaster*, Oxford English Dictionary, https://www.oed.com/view/Entry/53561 (last visited June 29, 2021). A pandemic which continues to cause widespread disease and death fits within this definition. *See Cougar Bus. Owners Ass'n v. State*, 647 P.2d 481, 486 (Wash. 1982) (en banc), *overruled in part by Yim v. City of Seattle*, 451 P.3d 694 (Wash. 2019) (holding that the threatened eruption of Mt. St. Helens constituted a "disaster" because it required the governor to take action "to save lives or property").

We thus conclude that the governor had the lawful authority under Revised Code of Washington § 43.06.010(12) to issue Proclamation 20-05, as the pandemic is both a "public disorder" and a "disaster" affecting "life [and] health" in Washington.

Washington Supreme Court cases regarding Revised Code of Washington § 43.06.010(12) confirm our understanding of the statute. *See Giles*, 494 F.3d at 872 ("Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986))). The Washington Supreme Court has held that "[t]he proclamation of an emergency and the Governor's issuance of executive orders" to address that emergency "are by statute committed to the

sole discretion of the Governor." *Cougar Bus. Owners Ass'n*, 647 P.2d at 486.

Although not addressing the legality of the proclamation directly, the Washington Supreme Court has signaled its approval of Governor Inslee's use of his emergency powers in the context of the COVID-19 pandemic. In *Colvin v. Inslee*, 467 P.3d 953 (Wash. 2020), that court discussed when a state of emergency may be declared under Revised Code of Washington § 43.06.010(12). *Id.* at 962–63. It noted that the court had "no authority to oversee the governor's many discretionary actions to address the COVID-19 outbreak" when he is acting pursuant to his emergency powers. *Id.* at 964. We are satisfied that the Washington court would reach the same conclusion that we have here, that the governor's issuance of Proclamation 20-05 was within the authority granted by the statute.

## B. *The L&I COVID-19 Rule*

Slidewaters argues that the L&I COVID-19 Rule, Washington Administrative Code § 296-800-14035, is beyond the scope of L&I's rulemaking authority.

The enabling statute for L&I states that the Department "shall make, adopt, modify, and repeal rules and regulations governing safety and health standards for conditions of employment as authorized by [the Washington Industrial Safety and Health Act] . . . ." Wash. Rev. Code § 49.17.040 (2021); *see also* Wash. Rev. Code § 49.17.010 (1973).

L&I, in promulgating the L&I COVID-19 Rule, acted within its scope of authority. The rule is focused on ensuring the "safety and health standards for conditions of

employment" by ensuring that employers abide by the COVID-19 capacity or closure restrictions directed by Proclamation 20-05 and its subsequent amending proclamations. The rule seeks to ensure that employees are not placed in unsafe conditions by their employers. That is within the scope of the Department's rulemaking authority.

## C.  Separation of Powers

Slidewaters presents an argument based on the separation of powers among the three branches of Washington state government under the state constitution. It argues that Defendants, executive branch actors, improperly assumed the roles of the legislative and judicial branches. Slidewaters accuses the governor of impermissibly writing laws through his proclamations and using administrative adjudication to avoid review by the courts.

By statute enacted by the Legislature, the governor's powers are enlarged during a state of emergency. *See* Wash. Rev. Code § 43.06.220 (2019). The statute "delegat[es] legislative police powers to the Governor in times of an emergency." *Cougar Bus. Owners Ass'n*, 647 P.2d at 487; *see also id.* at 485–86. In the face of COVID-19, the governor has used these powers to limit gathering in public or private, Wash. Rev. Code § 43.06.220(1)(b), and to ban activities he concluded "should be prohibited to help preserve and maintain life [and] health . . . ," Wash. Rev. Code § 43.06.220(1)(h). These powers are expressly delegated to the governor under the Revised Code of Washington § 43.06.220.

The executive branch's actions do not violate the principle of separation of powers with regard to the

legislative branch. The actions are within the authority delegated to Defendants by the Washington State Legislature. *See Barry & Barry, Inc. v. State Dep't of Motor Vehicles*, 500 P.2d 540, 542–43 (Wash. 1972). The delegation of power by the legislature to the executive to act in a time of emergency under the standards set out by the legislature and using the procedures dictated by the legislature does not present separation of powers concerns. *Id.*

The actions of Defendants also do not violate the principle of separation of powers with regard to the judicial branch. Administrative adjudication within L&I is not unlike adjudication of certain matters within the executive branch of the federal government, for example by immigration judges acting under the authority of the Attorney General, or administrative law judges for the National Labor Relations Board. There is probably some degree of administrative adjudication within the executive branches of every state. That is not unusual and does not itself constitute a violation of the separation of powers doctrine. Nor is it a recent outgrowth in response to COVID-19.

Administrative adjudication within L&I is not new. *See* 1973 Wash. Legis. Serv. Chap. 80 § 14 (creating Board of Industrial Insurance Appeals). The system established by the Washington Legislature allows for appeal to the superior courts after administrative exhaustion. Wash. Rev. Code § 49.17.150(1) (1982). The Washington Legislature created this system intentionally and explicitly. *See Cobra Roofing Servs., Inc. v. State Dep't of Labor & Indus.*, 135 P.3d 913, 917 n.6 (Wash. 2006) (en banc) (stating the statute provides for administrative and superior court review). Having an administrative review process does not replace, but rather

augments, judicial review and does not present a separation of powers violation.

## D.  County Health Officials

Slidewaters also argues that state-level entities are not the proper entities to address the pandemic and that the state of emergency and resulting state actions unlawfully impinge on the authority of county health officials.  It points to Revised Code of Washington § 70.05.070 for the proposition that all public health enforcement must be done at the county level.

The statute does not put ultimate authority in the hands of county officials.  When there is a direct conflict between state and county health regulations, the state prevails.  *See HJS Dev., Inc. v. Pierce Cnty ex. rel, Dep't of Plan. & Land Servs.*, 61 P.3d 1141, 1154 (Wash. 2003) (en banc); *see also* Wash. Const. art., XI § 11 (permitting localities to make and enforce regulations "not in conflict with general laws").  Indeed, the county health district stated explicitly last year in connection with the limitations imposed on Slidewaters that it did "not have the authority to override the Governor's orders, which [did] not [at that time] allow the operation of" Slidewaters' waterpark.

Revised Code of Washington § 43.70.130 is also cited by Slidewaters to support its argument, but it actually confirms the authority of state officials.  The statute outlines the powers and duties of the state secretary of health, including to "[e]xercise general supervision over the work of all local health departments."  Wash. Rev. Code § 43.70.130(6).  Local health officials play important roles, but are not autonomous or independent actors.  They are explicitly subject to supervision by the state secretary of health and

state board of health.  Wash. Rev. Code §§ 70.05.060(1) (1991), 70.05.070(1) (2020); *see also* Wash. Rev. Code § 43.70.130(4), (6) & (7).  Defendants are not improperly impinging on local health officials' domain as the local health officials answer to the secretary of health and the state board of health, state-wide entities.

Furthermore, in addition to state and county health officials, the state has placed authority into the hands of other departments.  *See Parkland Light & Water Co. v. Tacoma-Pierce Cnty. Bd. of Health*, 90 P.3d 37, 39 (Wash. 2004) (en banc) (Local health officials are not authorized "to act in areas where the legislature has made a more specific delegation of authority to another agency.").  L&I is charged with making and enforcing workplace safety and health standards.  *See* Wash. Rev. Code §§ 49.17.040, 49.17.010. The delegation of some public health enforcement responsibility to local governments does not strip other state agencies of the authority placed in them.

## IV.    Federal Constitutional Claim

Slidewaters also appeals the district court's dismissal of its federal claim.  Slidewaters argues that the state's actions impinge on Slidewaters' right to pursue a common calling and right to use its property as well as its employees' right to work and its owners' right to pursue their business and use their property as they see fit.  Slidewaters describes those as "substantive due process rights," with little elaboration as to their constitutional foundation.  Slidewaters cites *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020), a Supreme Court decision regarding COVID-19 restrictions on religious worship, to support its argument that the Washington restrictions violate its rights.  Slidewaters argues

Defendants acted arbitrarily by creating "one-size-fits-all" restrictions and not reviewing Slidewaters' own individual reopening plan.  The district court rejected Slidewaters' arguments and found no constitutional violation.  We review the district court's conclusions of law de novo.  *Powell's Books, Inc.*, 622 F.3d at 1208 n.7.

The right to pursue a common calling is not considered a fundamental right.  *Marilley v. Bonham*, 844 F.3d 841, 854 (9th Cir. 2016) (en banc) (collecting cases).  The right to use property as one wishes is also not a fundamental right. *Bowers v. Whitman*, 671 F.3d 905, 915–17 (9th Cir. 2012). Both of those described rights are economic in nature.  This court has held that "[t]he proper test for judging the constitutionality of statutes regulating economic activity . . . is whether the legislation bears a rational relationship to a legitimate state interest." *Jackson Water Works, Inc. v. Pub. Util. Comm'n of Cal.*, 793 F.2d 1090, 1093–94 (9th Cir. 1986).  Under this deferential standard, Slidewaters must show that the state's actions are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012) (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir.1994)).  Slidewaters does not dispute that its claim is subject to rational basis review.

There is a legitimate state interest in preventing the spread of COVID-19, a deadly contagious disease.  This has been recognized by the U.S. Supreme Court.  *See Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . .").  The question is whether Defendants' actions are rationally related to this interest.

States are given "great leeway in adopting summary procedures to protect public health and safety." *Mackey v. Montrym*, 443 U.S. 1, 17 (1979). That is true "even in the absence of an emergency in the usual sense." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1406 (9th Cir. 1989) (quoting *Mackey*), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (en banc). In an emergency, the leeway is even greater. *See id.* ("[G]overnment officials need to act promptly and decisively when they perceive an emergency." (citation omitted)).

Defendants created a state-wide plan. Among other things, the plan attempts to differentiate activities based on how essential they are. For example, grocery stores are deemed more essential than recreational businesses and are subject to less severe capacity restrictions. *See* Office of the Governor, *Healthy Washington Roadmap to Recovery* 3 (May 18, 2021), https://www.governor.wa.gov/sites/default /files/HealthyWashington.pdf (last visited June 29, 2021). The plan also groups different types of activities and treats them by category rather than requiring the state to conduct an assessment of each and every individual business or property. Particularly in dealing with an emergency that calls for prompt action, it is not irrational for Defendants to take this approach. The state is not required to draw a perfect line in determining which individual businesses can safely open and which cannot. *Cf. Vance v. Bradley*, 440 U.S. 93, 108–09 (1979) (under rational-basis review, classifications that are under- or over-inclusive do not create constitutional violations).

Slidewaters' reliance on *Roman Catholic Diocese* is misdirected. The primary point emphasized in that decision is that review of action impinging on religious practice is

more stringent than that applied when no fundamental right has been restricted.  When a law burdens religious practice and is not neutral or of general application, the government's actions "must be 'narrowly tailored' to serve a 'compelling' state interest." *Roman Cath. Diocese of Brooklyn*, 141 S. Ct. at 67 (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993)).  By comparison, when a law does not burden a fundamental right, the government's action must only be "rationally related to legitimate government interests." *See Washington v. Glucksberg*, 521 U.S. 702, 728 (1997).

In large part, Slidewaters' objection to its treatment under the proclamations and rules amounts simply to a disagreement with the judgment of Defendants.  Slidewaters is confident, as it states in its opening brief, that it "could and can operate safely."  But government regulation does not constitute a violation of constitutional substantive due process rights simply because the businesses or persons to whom the regulation is applied do not agree with the regulation or its application.  Defendants provide a rational basis for the proclamations and related rules.  The substantive due process rights of Slidewaters, its owners, and its employees are not violated by Defendants' actions.

## V. Consolidation of Preliminary and Permanent Injunction Motions

Federal Rule of Civil Procedure 65(a)(2) provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."  The district court here announced its inclination to treat Slidewaters' motion for a preliminary injunction "as if it were a motion for permanent

injunction," thereby consolidating the motion into a merits determination. This order was issued a week before the date set for submission of the motion for decision.

Slidewaters did not object to the district court's consolidation under Rule 65(a)(2). Slidewaters also did not raise an objection to the district court after the court issued its order denying the injunction and dismissing the complaint. Slidewaters challenges the district court's consolidation of its motion for preliminary injunction with the consideration on the merits for the first time in this appeal. A decision to consolidate an action under Federal Rule of Civil Procedure 65(a)(2) is reviewed for abuse of discretion. *Michenfelder v. Sumner*, 860 F.2d 328, 336 (9th Cir. 1988).

A district court must give "clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." *Id.* at 337 (alteration in original) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Our review of such a notice appropriately considers the context. A consolidation by the district court "will not be overturned on appeal 'absent a showing of substantial prejudice in the sense that a party was not allowed to present material evidence.'" *Id.* (quoting *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 101 (2d Cir. 1985)).

The district court gave clear and unambiguous notice to the parties of its intent to consolidate under Rule 65(a)(2) and provided a schedule for supplemental submissions. Slidewaters did not object.

Slidewaters now complains that it did not have a full opportunity to present its case.  It has failed, however, to identify what more it would have done that might reasonably have led to a different outcome.  It argues that it could have presented what it describes as "a richer record" if it had "the benefit of discovery," but when asked what discovery would have been sought and how it could have made a difference, it did not provide any specific examples.

Slidewaters has not identified any discovery that might have mattered, and we do not perceive any ourselves.  The issues raised by the complaint were legal.  The central challenge was to Defendants' authority under Washington law.  Resolving that challenge did not require additional factual development.  Slidewaters has not demonstrated that it was prejudiced by the consolidation or by the notice given by the district court.  *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 801 (9th Cir. 2019) (approving of Rule 65(a)(2) notice when given at the start of a hearing).

The district court provided adequate notice of its intent to consolidate the motion for preliminary injunction with its consideration of the merits as required under Rule 65(a)(2). It also provided sufficient time, especially given the expedited nature of the case, for Slidewaters to protest the consolidation or submit additional arguments for the court to consider. Slidewaters was not substantially prejudiced by the consolidation, and the district court did not abuse its discretion in how it organized its consideration of the issues before it.

**VI.    Decision to Rule on Slidewaters' State Law Claims**

Slidewaters originally filed this case in state superior court.  Defendants removed the case to federal court under 28 U.S.C. § 1441 as the complaint included a federal claim. The district court took supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

Slidewaters did not object to the district court's consideration of the case or of the portions of its claims based on state law.  Instead, on the same day as the removal, it filed in the district court a motion for temporary restraining order and a motion to expedite.  That motion for temporary restraining order included arguments on its state law claims. Slidewaters raised and argued those state law claims in the motion for preliminary injunction it filed in the district court. Again, Slidewaters requested expedited consideration of its motion. The district court then decided Slidewaters' state law claims.  Slidewaters made no objection to the process employed by the district court even after that court issued its order.

Nonetheless, Slidewaters argues on appeal that the district court should not have decided its state law claims but instead should have declined to do so and waited for a Washington court to rule on the issues.  Specifically, Slidewaters argues that the district court should have remanded its state law claims or certified them to the Washington Supreme Court.

Slidewaters makes this argument on appeal even though it repeatedly raised and argued its state law claims, requested the district court to expedite its decision on those claims, and never objected to the district court deciding its state law claims.  Slidewaters does not explain how the district court

could have remanded this case to state court following its removal by Defendants. It has not argued to either the district court or to us on appeal that the removal was improper. Nor has it identified a pending state court proceeding raising the relevant issues in favor of which the district court should have abstained.

Slidewaters argues that the district court should have abstained from ruling on its state law claims under the *Pullman* doctrine. *See Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). We address this previously unraised argument because forfeiture in the district court does not preclude us from reviewing whether *Pullman* abstention was appropriate. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001).

Under *Pullman* abstention the "federal courts have the power to refrain from hearing cases . . . in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1209 (9th Cir. 2021) (alteration in original) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17 (1996)). Abstention is appropriate if: "(1) there are sensitive issues of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open, (2) constitutional adjudication could be avoided by a state ruling, and (3) resolution of the state law issue is uncertain." *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010) (citation omitted).

In this instance, whatever might be said about the first two factors, the last factor is plainly not satisfied. This case does not present a close question of state law. The resolution

of a state law issue is "uncertain" when "a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law." *Courtney v. Goltz*, 736 F.3d 1152, 1163 (9th Cir. 2013) (quoting *Pearl Inv. Co. v. City & Cnty. of San Francisco*, 774 F.2d 1460, 1465 (9th Cir. 1985)).  That is not true here, for the reasons already discussed.  The state law claims did not require abstention under the *Pullman* doctrine.

Slidewaters also argues that the district court should have certified state law questions to the Washington Supreme Court.  It did not raise that alternative to the district court, either.

The use of certification "in a given case rests in the sound discretion of the federal court." *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974).  "Our system of 'cooperative federalism' presumes federal and state courts alike are competent to apply federal and state law." *Mckesson v. Doe*, 141 S. Ct. 48, 51 (2020).  Certification is appropriate when it is "uncertain" how the state high court would resolve the state law issue.  *See Allied Premier Ins. v. United Fin. Cas. Co.*, 991 F.3d 1070, 1076 (9th Cir. 2021).  Certification of questions to the Washington Supreme Court was not required in this instance, though, as the answers to the state law questions were not uncertain.

Finally, Slidewaters attempts to bolster its broad assertion that the district court should not have adjudicated the state law issues presented by Slidewaters' own complaint and motion for injunctive relief.  It does so by asserting that it was "improper" for the district court to exercise jurisdiction over its state law claims while ultimately remanding Defendants'

counterclaim to state superior court. Exactly what was legally "improper" about it has not been specified.

As the district court explained in its order, upon the dismissal of Slidewaters' complaint, including its federal constitutional claim, there was no longer a basis for federal question jurisdiction remaining in the case. The court thus declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). Slidewaters does not contest the soundness of that explanation under the law. Moreover, as noted above, at 8, that counterclaim was dismissed by Defendants, so Slidewaters was not prejudiced by the remand in any event.

The district court did not abuse its discretion by remanding Defendants' state law claim. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))). It also did not abuse its discretion in treating the two sets of claims differently as the litigants did not treat the claims similarly. Slidewaters' claims were fully briefed whereas Defendants' claim was not. Resolving the fully briefed claims while remanding the untouched claim was not an abuse of discretion but rather an exercise of judicial economy. *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011).

We affirm the judgment of the district court.

**AFFIRMED.**